Jamil K. Khuja (MI State Bar No. P71963)
    khujalaw@gmail.com
Khuja Law Firm, P.L.L.C.
1360 Porter St., Ste. 200
Dearborn, MI 48124
Tel: (313) 263-3333; Fax (313-945-0103)
*Local Counsel for Plaintiff*

CHARLES D. SWIFT (TX State Bar No. 24091964) *(admitted to E.D. Mich.)*
    cswift@clcma.org
CHRISTINA JUMP (TX State Bar No. 00795828) *(admitted to E.D. Mich.)*
    cjump@clcma.org
Constitutional Law Center for Muslims in America (CLCMA)
833 E. Arapaho Rd., Ste. 102
Richardson, TX 75081
Tel: (972) 914-2507; Fax: (972) 692-7454
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **KHALID M. TURAANI**, | CASE NO.: 19-11768 |
| *Plaintiff,* | |
| vs. | |
| **CHRISTOPHER A. WRAY**, in his official capacity as Director of the Federal Bureau of Investigation; **CHARLES H. KABLE, IV**, in his official capacity as Director of the Terrorist Screening Center; and **JASON R. CHAMBERS**, in his individual capacity. | CIVIL ACTION |
| | **PLAINTIFF'S ORIGINAL COMPLAINT** |
| *Defendants.* | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Khalid M. Turaani, by and through undersigned counsel, files this Original Complaint against Defendants Christopher A. Wray, Charles H. Kable IV, and Jason R. Chambers, and in support thereof shows the following:

## INTRODUCTION

PLAINTIFF Khalid M. Turaani is a United States citizen of Palestinian national origin, domiciled in Michigan. Plaintiff has no criminal convictions, history of mental health issues, or otherwise disqualifying criteria which would prevent him from purchasing a firearm. Nonetheless, whenever he has tried recently to purchase a firearm lawfully, he is effectively denied the opportunity to buy a firearm due to prohibited disclosures and interference by the FBI and/or its agents that also violate Plaintiff's privacy and reputational interests and make any sale of a firearm to him impracticable. In the instant case, FBI agent Jason R. Chambers' actions and communications include telling a firearms seller from whom Plaintiff was trying to purchase a firearm that the FBI "does not like the company that he [Plaintiff] keeps," and implying that Plaintiff has links to either crimes, terrorism, or people associated with crimes or terrorism. These communications exceed the permitted scope to be disclosed under the relevant regulations. As a direct result of these communications, the firearms seller was unwilling to sell Plaintiff a firearm. These disclosures also violated Plaintiff's privacy interests, damaged his reputation, and resulted in the alteration of his rights

under state and federal law. If Defendant Chambers' actions are deemed to have been within the scope of his employment, these acts constitute violations by the FBI of the requirements of the Privacy Act of 1974, the Administrative Procedure Act, and the stigma-plus doctrine. If Defendant Chambers acted outside the scope of his authority, he, upon information and belief, violated Plaintiff's contractual rights under 42 U.S.C. § 1981.

## I.    **Jurisdiction and Venue**

1. This is a civil action authorized by 5 U.S.C. §§ 551-559 and § 706 (the Administrative Procedure Act), 5 U.S.C. § 552a (the Privacy Act), and 42 U.S.C. § 1981.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201, 2202 and Fed. R. Civ. P. 57.

3. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## II.    **The Parties**

4. Plaintiff Khalid M. Turaani is an individual of Palestinian national origin and a citizen of the United States and of the state of Michigan.

5. Defendant Christopher A. Wray is the Director of the FBI. The FBI maintains the National Instant Criminal Background Check System ("NICS"), and oversees the Terrorist Screening Center ("TSC").  Defendant Wray is sued in his official capacity.

6.  Defendant Charles H. Kable, IV is the Director of the TSC. The TSC develops and maintains the federal government's consolidated Terrorist Screening Database ("TSDB"), which contains watch lists such as the No Fly List. Defendant Kable is sued in his official capacity.

7.  Defendant Jason R. Chambers is an FBI agent who, upon information and belief, visited a firearms seller the day after Plaintiff attempted to lawfully purchase a firearm from the seller at a gun show, and asked the seller what he knew about the Plaintiff; Defendant Chambers informed the seller that the FBI doesn't "like the company" Plaintiff keeps, and then attempted to obtain information about the gun sale transaction. Defendant Chambers is sued in his individual capacity in the event his actions are deemed outside the scope of his employment and authority.

### III.    Statement of Relevant Facts

#### a.  The NICS

8.  Plaintiff hereby alleges and incorporates all numbered paragraphs above.

9.  The NICS was established by the Office of the Attorney General to implement procedures required under the Brady Act. 28 C.F.R. § 25.1; *see also* 1993 Enacted H.R. 1025, 107 Stat. 1536, 103 P.L. 159.

10.  Under the Brady Act, the NICS must be contacted by any licensed importer, licensed manufacturer, or licensed dealer of firearms for information as to

4

whether the transfer of a firearm to any person who is not licensed under 18 U.S.C. § 923 would be permissible under federal or state law.[1]

11.   To access the NICS for the purpose of conducting a NICS background check, a Michigan Federal Firearms Licensee ("FFL") contacts the NICS Operations Center by telephone or electronic access.[2]

12.   In conducting a NICS background check, the NICS Operations Center assigns a NICS Transaction Number (NTN), searches the relevant databases and provides either a "proceed," "delayed," or "denied" response.[3]

13.   Precautions exist seeking to ensure the security and privacy of NICS information, such as only providing a response of "proceed," "delayed," or "denied," *without providing the details of any information about the transferee's records*.[4]

14.   If NICS staff does not make a final determination on a transaction, the status automatically defaults to "open," or, in other words, "proceed," three business

---

[1] *Id.*; *see also* FBI.gov, About NICS, https://www.fbi.gov/services/cjis/nics/about-nics (last visited June 5, 2019).

[2] 28 C.F.R. § 25.6(a); *see also* FBI.gov, About NICS, *supra* note 1.

[3] *See* 28 C.F.R. § 25.6 (c)(1).

[4] *See* 28 C.F.R. § 25.8(g)(2) (emphasis added).

days after the initial inquiry.[5]

    **b. Plaintiff's Eligibility to Purchase a Firearm**

15.    Plaintiff hereby alleges and incorporates all numbered paragraphs above.

16.    Under 18 U.S.C. § 922 (g), it is unlawful for persons to receive, possess, sell, or otherwise dispose of a firearm if:

    a.  They have been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

    b.  They are fugitives from justice;

    c.  They are unlawful users of or addicted to any controlled substance;

    d.  They have been adjudicated as having a mental defect or have been committed to a mental institution;

    e.  They are aliens who are either illegally or unlawfully in the United States, or were admitted under a nonimmigrant visa;

    f.  They were discharged from the Armed Forces under dishonorable conditions;

    g.  They renounced their U.S. citizenship;

---

[5] *See* GAO, *Gun Control and Terrorism,* Jan. 2005
http://www.gao.gov/new.items/d05127.pdf (last visited June 5, 2019).

    h. They are subject to a court order restraining them from harassing, stalking, or threatening an intimate partner, or such conduct that would place an intimate partner in reasonable fear of bodily injury; or

    i. They have been convicted of a misdemeanor of domestic violence.

17.    Plaintiff has no criminal convictions.

18.    Plaintiff is not a fugitive from justice.

19.    Plaintiff has never used or been addicted to any controlled substance.

20.    Plaintiff has never been adjudicated as mentally defective, and has never been committed to a mental institution.

21.    Plaintiff became a naturalized United States citizen since August 19, 1994, and is in the United States lawfully.

22.    Plaintiff has never served in, and, accordingly has never been discharged from, the United States Army under dishonorable conditions.

23.    Plaintiff has never renounced his United States citizenship.

24.    Plaintiff is not and never has been subject to a protective order or any other court order restraining him from harassing, stalking, or threatening an intimate partner or child.

25.    Plaintiff has never been convicted in any court of a misdemeanor crime of domestic violence.

26.    Plaintiff is not and never has been under indictment for a crime.

27.     Plaintiff has no knowledge of any legal issues in the state of Michigan or elsewhere which would prevent him from purchasing a firearm.

28.     Congress has considered, but *never voted to implement*, several acts which would have added persons in the TSDB to the list of prohibited gun owners.[6]

29.     Despite numerous attempts by Congress to prohibit those in the TSDB from obtaining firearms, these attempts have all failed to become law due to objections over the lack of due process afforded by these proposed limitations.[7]

###     c.  Consulting the TSDB

30.     Plaintiff incorporates all numbered paragraphs above.

31.     The majority of the records in the NICS are obtained from Federal agencies.[8]

---

[6] *See* No Fly, No Buy Act of 2009, H.R. 2401, 111th Cong. (2009); *see also* No Guns for Terrorists Act of 2015, H.R. 4069, 114th Cong. § 1 (2015); Denying Firearms and Explosives to Dangerous Terrorists Act of 2015, S. 551, H.R. 1076, 114th Cong. § 1 (2015); S. Amend. 2910 to S. Amend. 2874 to H.R. 3762, 114th Cong. (2015); S. amend. 4858 to H.R. 2578, 114th Cong. § 2 (2016); *see also* H.R. 5576, 114th Cong. § 2 (2016); S. Amend. 4749 to H.R. 2578, 114th Cong. (2016); S. Amend. 4720 to H.R. 2578, 114th Cong. (2016) (emphasis added).

[7] *See* David Herszenhorn, *Bipartisan Senate Group Proposes 'No Fly, No Buy' Gun Measure*, N.Y. Times, June 21, 2016, *available at* https://www.nytimes.com/2016/06/22/us/politics/senate-gun-control-no-fly-list-terrorism.html (quoting Sen. John Cornyn: "I think it's a slippery slope when an American citizen is denied a constitutional right without forcing the government to come forward with some evidence on the front end, as opposed to leaving that on the back end.").

[8] *See* 28 CFR 25.4 ("Most records in the NICS Index will be obtained from Federal agencies").

32.     The NICS began utilizing terrorist watch list records on February 3, 2004.[9]

33.     Effective February 3, 2004, all NICS transactions with potential or valid matches to terrorist watch list records are automatically delayed to give NICS personnel the chance to further research the transaction for prohibiting information before a response (e.g., "proceed" or "denied") is given to the initiator of the background check.[10]

34.     This practice of delaying transactions when matches to watch list records occur has existed for over a decade, despite no federal law explicitly prohibiting those on any watch list from purchasing firearms (*cf.* the specific prohibitive categories enumerated under 18 U.S.C. § 922 (g)).

35.     Once again, all that should be communicated by the FBI or come across electronically to the FFL after the NICS search should be the aforementioned "proceed" "deny" or "delay" notifications; no further communication or action in relation to the background search is permitted under the applicable agency regulations.

### d.  Unwarranted Disclosures by Defendants

36.     Plaintiff incorporates all numbered paragraphs above.

---

[9] *See Gun Control and Terrorism, supra note* 5.

[10] *See id.*

37. Plaintiff is prominent in the Palestinian American and Muslim communities, as evidenced by his involvement in several nonprofit organizations that assist the Palestinian and Muslim communities.

38. Plaintiff was previously the CEO of LIFE for Relief and Development, which is a global humanitarian relief and development organization that aids the poor and needy in several countries, including Palestine through its office in Israel.

39. On Sunday, August 5, 2018, Plaintiff attended the Birch Run Gun Show in Birch Run, Michigan.

40. Plaintiff paid a $7.00 entrance fee, spent $27.00 on gas to travel to and from Birch, MI, and $20.00 for lunch while attending this show.

41. At the Birch Run Gun Show, Plaintiff attempted to lawfully purchase a firearm.

42. Plaintiff was informed by the seller that he had received a "delay" response on the NICS background check.

43. The seller, named Steve, advised Plaintiff to contact him again after three days passed, and he could likely sell Plaintiff the firearm at that time.

44. The seller did not indicate he would be otherwise opposed to selling Plaintiff a firearm due to the receipt of the delay notification. The seller even communicated that after three days there would not be an issue in selling to

Plaintiff, as long as the transaction remained open, since the delay notification is something the seller had seen before when selling firearms.

45.     When Plaintiff did contact the seller again at the end of that week, the seller informed Plaintiff that an FBI agent, who upon information and belief, is Defendant Chambers, showed up at the seller's residence (which is also the seller's place of business), in Goodrich, MI on August 6, 2018 (the day after Plaintiff's attempted purchase), to speak with the seller about Plaintiff.

46.     The FBI agent asked to see exactly what Plaintiff filled out himself regarding the attempted purchase.

47.     The FBI agent then told the seller that "we have a problem with the company he [Plaintiff] keeps."

48.     The FBI agent showed the firearms seller a photograph of Plaintiff in a suit, with one other individual who, upon information and belief, was of Middle Eastern descent, and asked the seller if he recognized the other individual in the photograph.

49.     According to the seller, the photograph showed Plaintiff and another man in suits, and appeared to be a cropped photo.

50.     The seller relayed to Plaintiff that the seller did not recognize the other individual in the photograph since he does not keep up with politics, and that he had informed Defendant Chambers of that as well.

51.   Defendant Chambers left his contact information with the seller (giving two phone numbers and an email for "JR Chambers"), and asked the seller to pass it along to Plaintiff.

52.   The seller informed Plaintiff that while he technically could sell the gun to Plaintiff once the three days had expired and had previously planned to do so, as Plaintiff's status was listed as "open," the seller now was no longer comfortable doing so because of the visit by and statements made by the FBI agent regarding Plaintiff.

53.   Defendant Chambers' actions and communications exceeded the permissible scope of what can be communicated after an NICS inquiry, since FFLs do not have a need-to-know under the applicable administrative regulations.

54.   The seller again contacted Plaintiff on Monday, August 13, 2018, and provided Plaintiff with the contact information for the FBI agent who had come to see him (Defendant Chambers).

55.   At that time, the seller confirmed that while the NICS background report showed Plaintiff's status as "open", the seller remained unwilling to sell Plaintiff a firearm because of the FBI agent's visit and statements regarding Plaintiff.

56.   Plaintiff's fundamental and protected liberty interest, the right to bear arms, was damaged as a result of Defendant Chambers' prohibited communications and disclosures to the firearms seller.

57.   Plaintiff's privacy interests were damaged as a result of Defendant Chambers' prohibited communications and disclosures to the firearms seller.

58.   Plaintiff has suffered emotional distress as a result of Defendant Chambers' prohibited communications and disclosures to the firearms seller.

59.   Plaintiff's reputation was damaged as a result of Defendant Chambers' prohibited communications and disclosures to the firearms seller.

### e.   Ongoing Pattern of Prohibited FBI Communications Interfering with Plaintiff's Protected Liberty Interest

60.   Plaintiff incorporates all numbered paragraphs above.

61.   The FBI has demonstrated an ongoing pattern of interfering with Plaintiff's Second Amendment right to bear arms, which is a widely recognized protected liberty interest.

62.   For example, on June 24, 2017, Plaintiff attempted to purchase a pistol from Target Sports Orchard Lake, also known as Target Sports II, a gun shop in Orchard Lake, Michigan.

63.   As is standard protocol in Michigan, a Target Sports Orchard Lake store clerk, named Roy first ran a background check on Plaintiff, including searching his name in the NICS, before completing the sale of a firearm to Plaintiff.

64.    After the clerk initiated the NICS search, an unknown individual purporting to be an FBI agent called the clerk, and informed him that the transaction must be delayed because Plaintiff is under active government investigation.

65.    The FFL did not have a need-to-know any underlying information for the delay regarding a sale to Plaintiff, and the regulations prohibit exactly that. The FBI Agent thereby exceeded the responses permitted under applicable federal law.

66.    The clerk followed the instructions given by the FBI agent, and told Plaintiff the sale could not be completed at that time.

67.    The clerk never heard back from the FBI or that unknown agent.

68.    Because the unknown agent previously indicated to the store clerk that Plaintiff was under FBI investigation, the clerk did not feel he could, or should, complete the transaction with Plaintiff.[11]

69.    The clerk also felt that if the FBI was investigating Plaintiff, the last thing he would want to do is sell Plaintiff the gun.

---

[11] Federal Firearms Licensees ("ffls") are permitted, ***at their discretion***, to transfer firearms three days after the delay response, unless prohibited by state law. *See* 28 C.F.R. § 25.6(c)(1)(iv)(B) ("A 'Delayed' response to the FFL indicates that the firearm transfer should not proceed pending receipt of a follow-up 'Proceed' response from the NICS or the expiration of three business days (exclusive of the day on which the query is made.")) (emphasis added).

70.     Plaintiff recalls seeing a large note in black marker attached to his paperwork at the Target Sports Orchard Lake gun store on a recent visit, which instructs any store clerk coming into contact with Plaintiff not to sell Plaintiff a firearm under any circumstance.

71.     Due to Target Sports Orchard Lake's location in Plaintiff's community, Plaintiff has experienced harm in his employment, as a large part of his work includes paid speaking engagements and raising money for non-profit organizations. Many donors and organizers that Plaintiff knows regularly visit Target Sports Orchard Lake and have witnessed Plaintiff's difficulties at that store, which are a direct result of the FBI's unauthorized communications to the store clerk that Plaintiff was under active government investigation.

72.     Most recently, FBI agent Defendant Chambers specifically appeared in person to inform the seller from the Birch Run Gun Show that "we have a problem with the company [Plaintiff] keeps," and showed the seller a photograph of Plaintiff with another individual, the day after Plaintiff attempted to purchase a firearm.

73.     The FBI's interference in this manner continues to cause Plaintiff harm and lacks any legitimate justification, since Plaintiff meets no prohibiting criteria under the relevant authority preventing him from possessing a firearm, and

since only the delay notification is authorized to gun sellers <u>without</u> additional communications or actions by the FBI.

74.     The actions and communications by the FBI and/or its agents create a chilling effect that directly resulted in the loss of Plaintiff's protected liberty interest in bearing arms.

75.     The actions and communications by the FBI and/or its agents resulted in harm to Plaintiff's employment due to the stigma they created, as a large part of his work includes paid speaking engagements and raising money for non-profit organizations.

76.     The actions by the FBI and/or its agents (most recently by Defendant Chambers) give the clear impression to others that Plaintiff presents a risk, despite no charges pending against him or the existence of any disqualifying criteria.

77.     Accordingly, the actions by the FBI and/or its agents damaged Plaintiff's reputation and violated his privacy interests.

78.     These actions and communications by Defendant Chambers constitute violations by the FBI of the Administrative Procedure Act.

79.     In the alternative, if Defendant Chambers acted outside the scope of his employment and authority, he interfered with Plaintiff's potential contract with the gun seller, upon information and belief due to Plaintiff's national origin.

80.    Defendant Chambers targeted Plaintiff, upon information and belief due to

his national origin, as evidenced by Defendant Chambers stating that Plaintiff, a

prominent figure in the Palestinian community, kept suspicious company of

which the government did not approve.

### IV.    Causes of Action

a.    **COUNT ONE:**
**VIOLATIONS OF THE PRIVACY ACT OF 1974 BY**
**DEFENDANTS WRAY AND KABLE**

81.    Plaintiff hereby alleges and incorporates all paragraphed numbers above.

82.    Defendants Wray and Kable are liable in their official capacities under the

Privacy Act of 1974 because, through Defendant Chambers, these government

agencies made prohibited disclosures.

83.    According to a Senate report, "the Privacy Act [of 1974] is aimed at

'preventing collection of protected information not immediately needed, about

law-abiding Americans, on the off-chance that Government or the particular

agency might possibly have to deal with them in the future.'"[12]

84.    The Privacy Act of 1974 "safeguards the public from unwarranted

collection, maintenance, use and dissemination of personal information

---

[12] *Raimondo v. FBI*, 2016 U.S. Dist. LEXIS 61958, *46 (N.D. Cal. May 10, 2016)
(quoting *J. Roderick MacArthur Found. V. FBI,* 102 F.3d 600, 604 (quoting Senate
Report No. 1183, 93d Cong., 2d Sess. 57 (Sept. 26, 1974)).

contained in agency records […] by allowing an individual to participate in ensuring that his records are accurate and **properly used**."[13]

85.    The Privacy Act provides government agencies with detailed instructions for managing records, and "provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements."[14]

86.    Under the Privacy Act, no agency shall disclose any record which is contained in a system of records to any person, or to another agency, except pursuant to a written request by the individual, with few exceptions, such as if there is a "need-to-know."

87.    Agencies are liable under the Privacy Act when they violate one of its provisions willfully or intentionally, and the violations create an adverse effect on the Plaintiff.

88.    Defendants willfully and/or intentionally violated the Privacy Act because their own NICS policies explicitly prohibit any additional disclosure other than the automatic sending of a "proceed" "delay" or "deny" notification.

---

[13] *Raimondo*, 2016 U.S. Dist. LEXIS 61958 at *32, 33 (emphasis added) (quoting *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (internal citation and quotation marks omitted)).

[14] *Doe v. Chao*, 540 U.S. 614, 618 (2004).

89.     Defendants willfully and/or intentionally violated the Privacy Act because the Defendants were aware that such extensive communications and interference were prohibited based on a prior lawsuit filed by Plaintiff.[15]

90.     Due to the actions of Defendants, Plaintiff has suffered and continues to suffer actual damages, including but not limited to out of pocket losses.

91.     These damages were caused by the actions of the Defendants because, but for the actions of Defendants, the gun seller would have sold Plaintiff the gun after the delay notification expired, and has made that clear to Plaintiff more than once.

92.     For agencies to be liable for Privacy Act violations committed by an employee of the agency, the responsible agency employees must have been acting within the scope of their employment and must have accessed a system of records.

93.     Upon information and belief, Defendant Chambers, working on behalf of the FBI, accessed a system of records but then failed to comply with the

---

[15] *See Turaani v. Sessions*, 316 F. Supp. 3d 998, 1010 (E.D. Mich. 2018) (stating that "*Turaani* is correct that the FBI agent violated 28 C.F.R. § 25.8(g)(2) by disclosing that Turaani was the target of an FBI investigation. That provision mandates that the FBI "only provide a response of 'Proceed' or 'Delayed' (with regard to the prospective firearms transfer)," and demands that the FBI "not provide the details of any record information about the transferee." (internal citations omitted)

requirements prescribed under those regulations or the Privacy Act, by

exceeding the actions and communications permitted after a NICS inquiry.

94.    Any policy of the Defendants which authorizes actions and communications

like those committed by Defendant Chambers violates the requirements of the

Privacy Act of 1974, since firearm sellers have no need-to-know any underlying

reasons for delay notifications from NICS background searches.

95.    In the alternative, if Defendant Chambers acted outside the scope of his

employment, upon information and belief and as outlined below, Defendant

Chambers violated 42 U.S.C. § 1981 by interfering with Plaintiff's potential

contract with the firearms seller, based on Plaintiff's national origin.

### b. COUNT TWO:
### VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT BY DEFENDANTS WRAY AND KABLE

96.    Plaintiff incorporates all numbered paragraphs above.

97.    The Administrative Procedure Act ("APA") is "a procedural device that

enables courts to 'compel agency action unlawfully withheld or unreasonably

delayed,' and to set aside actions that are 'arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law.'"[16]

---

[16] *United States v. City of Detroit*, 329 F.3d 515, 527 (6th Cir. 2003) (quoting 5 U.S.C. § 706)

98.   When government representatives take actions without observance of the procedures required by law, those actions are arbitrary and capricious, as well as an abuse of discretion.

99. Defendants Wray and Kable, via the actions of their agents and/or representatives, took actions without observance of their own prescribed procedures when the agencies failed to follow the relevant NICS policies explicitly prohibiting any additional disclosure other than the automatic response of a "proceed" "delay" or "deny" notification after a NICS inquiry.

100.   Therefore, Defendants Wray and Kable violated the APA because Defendants' actions were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and were without observance of their own prescribed procedures as required by law.

   c. **COUNT THREE:**
      **<u>STIGMA PLUS VIOLATION BY DEFENDANTS WRAY AND
      KABLE</u>**

101.   Plaintiff incorporates all numbered paragraphs above.

102.   Government actions violate the stigma plus doctrine when they result in injuries to an individual's reputation and deprive that individual of rights previously held under federal and/or state law.

103.   When statements or actions by government agents "might seriously damage [the Plaintiff's] standing and associations in [their] community," this damage is sufficiently stigmatizing under the stigma plus analysis.[17]

104.   The actions and communications by the Defendants through Defendant Chambers and, upon information and belief, other representatives, injured Plaintiff's standing in the community, because firearm sellers are reluctant and/or unwilling to sell him a firearm or otherwise associate with him.

105.   These actions and communications by the Defendants through Defendant Chambers and, upon information and belief, other agents, were false because they imply criminal conduct or associations by Plaintiff.

106.   These actions and communications by the Defendants through Defendant Chambers and, upon information and belief, other agents, falsely created the impression that Plaintiff has committed or will be charged with crimes.

107.   These actions and communications by the Defendants, through Defendant Chambers and/or other agents, gave the firearms sellers objectively reasonable grounds to believe that Plaintiff is dangerous or has, or is suspected of having, ties to terrorism.

108.   These actions and communications not only have injured Plaintiff's reputation and standing in the community, but have previously prevented

---

[17] *Vanelli v. Reynolds Sch. Dist. No. 7,* 667 F.2d 773, 777 n.5 (9th Cir. 1982).

Plaintiff from exercising his Second Amendment rights, which are guaranteed to him under state and federal laws.

109.   Pursuant to the Second Amendment, the right of the people to keep and bear arms "shall not be infringed." U.S. Const. Amend. II.

110.   The right to keep and bear arms is fundamental to the American "scheme of ordered liberty," as individual self-defense is the central component of the right, and the right of self-defense is deeply rooted in this nation's "history and tradition."[18]

111.   Due to the actions of the Defendants, through Defendant Chambers and/or other agents, the firearms sellers were reluctant and/or unwilling to sell a firearm to Plaintiff even after the delay notification cleared.

112.   These actions and communications of Defendants, through Defendant Chambers and/or other agents, created a government-imposed alteration of Plaintiff's right to purchase a firearm.

113.   The actions by Defendants Wray and Kable via their agent(s) have stigmatized Plaintiff, injured his reputation, affected his standing in the community, and deprived Plaintiff of rights guaranteed to him under federal and/or state law, and continue to do so, therefore violating the stigma plus doctrine.

---

[18] *District of Columbia v. Heller,* 554 U.S. 570, 595-99 (2008).

### d. COUNT FOUR:
 **VIOLATION OF 42 U.S.C.  § 1981 BY DEFENDANT CHAMBERS**

114.   Plaintiff incorporates all numbered paragraphs above.

115.   Under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), all persons within the jurisdiction of the United States are entitled to the full and equal benefit of all laws and proceedings for the security of persons and property as are enjoyed by white citizens.

116.   Furthermore, under § 1981, all persons are protected from impairment of the right to make and enforce contracts based on their race.

117.   Upon information and belief, Defendant Chambers acted outside the scope of his employment and authority by showing up to the gun seller's store the day after Plaintiff attempted to purchase a firearm to ask about Plaintiff's attempted gun transaction and what the seller knew about Plaintiff.

118.   The FBI has published policies that state that no disqualifying information should be communicated aside from a "Delay" notification, once a firearms seller runs the required NICS background check.

119.   Defendant Chambers told the firearms seller that the FBI did not like the company Plaintiff keeps, and showed the firearms seller a picture of Plaintiff that, upon information and belief, was of Plaintiff with other prominent Palestinian figures.

24

120.   Showing up to question the firearms seller with questions seeking further details about Plaintiff's application for a firearms purchase, and stating that the FBI does not like the company Plaintiff keeps, shows further disparate treatment as compared to others who attempt to purchase firearms, due to the chilling effect these communications create.

121.   Upon information and belief, Defendant Chambers took these disparate actions due to Plaintiff's national origin.[19]

122.   Upon information and belief, Defendant Chambers thereby unlawfully interfered with the potential valid arrangement between Plaintiff and the firearms seller due to discriminatory animus, based on the national origin of Plaintiff and his position in the Palestinian community.

123.   Therefore, upon information and belief, Defendant Chambers unlawfully interfered with and violated Plaintiff's contractual right to purchase firearms, in violation of 42 U.S.C. § 1981.

## V.   PRAYER FOR RELIEF

Plaintiff prays for judgment of liability in favor of the Plaintiff, and respectfully requests that this Court grant the following relief:

1) For all costs and expenses herein, against all Defendants;

---

[19] Section 1981's language as to "race" has been deemed also applicable to national origin, and therefore Plaintiff's Palestinian heritage in this matter.

2) For attorney's fees and costs, including reasonable attorneys' fees and costs as provided by any applicable provision of the law, against all Defendants;

3) For judgment against all Defendants for injunctive and declaratory relief that Defendants are prohibited from disclosing any underlying information about Plaintiff, and other similarly situated individuals who attempt to purchase firearms and undergo the NICS background search process;

4) For actual damages against Defendants Wray and Kable for an amount to be proved at trial, including lost wages;

5) For compensatory damages against Defendants Wray and Kable for their violations of the Privacy Act, for not less than $1,000.00; and

6) Any additional relief this Court deems just, proper, and equitable.

Respectfully submitted this 13th day of June, 2019.

**/s/ *Christina A. Jump***
Charles D. Swift
Counsel for Plaintiff
TX State Bar No. 24091964
Christina A. Jump
Counsel for Plaintiff
TX State Bar No. 00795828
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
Tel: (972) 914-2507
Fax: (972) 692-7454
cswift@clcma.org
cjump@clcma.org

Jamil K. Khuja
Local Counsel for Plaintiff
MI State Bar No. P71963
Khuja Law Firm, P.L.L.C.
1360 Porter St., Ste. 200
Dearborn, MI 48124
Tel: (313) 263-3333
Fax (313-945-0103)
khujalaw@gmail.com

## <u>VERIFICATION OF COMPLAINT</u>

I, Khalid M. Turaani, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this <u>12th</u> day of June, 2019.