UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Khalid M. Turaani,

     Plaintiff,

v.

Christopher A. Wray, in his official
capacity as Director of the Federal
Bureau of Investigation;
Charles H. Kable, IV, in his official
capacity as Director of the Terrorist
Screening Center; and
Jason R. Chambers, in his individual
capacity,

     Defendants.

Civil No. 19-11768

Honorable Robert H. Cleland
Mag. Judge Elizabeth A. Stafford

---

### Defendants' Christopher A. Wray, Charles H. Kable, IV, and Jason R. Chambers's Motion to Dismiss

---

Defendants Christopher A. Wray, Charles H. Kable, IV, and Jason R. Chambers[1], through their attorneys, Matthew Schneider, United States Attorney for the Eastern District of Michigan, and Bradley H. Darling, Assistant United States Attorney, move this Court for dismissal of this action pursuant to Fed. R. Civ. P.

---

[1] The Complaint spells Defendant Chambers's first name as "Jason," but his first name is actually spelled "Jayson."

12(b)(1) and (6). Defendants rely on the facts, law, and exhibits attached to the Complaint and the brief in support of its request.

Undersigned counsel sought concurrence in the relief requested pursuant to E.D. Mich. LR 7.1(a) via email on December 19, 2019, but concurrence was not obtained.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*/s/ Bradley H. Darling*
BRADLEY H. DARLING (P63176)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9137
Bradley.Darling@usdoj.gov

Dated: December 19, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Khalid M. Turaani,

      Plaintiff,

v.

Christopher A. Wray, in his official
capacity as Director of the Federal
Bureau of Investigation;
Charles H. Kable, IV, in his official
capacity as Director of the Terrorist
Screening Center; and
Jason R. Chambers, in his individual
capacity,

      Defendants.

Civil No. 19-11768

Honorable Robert H. Cleland
Mag. Judge Elizabeth A. Stafford

---

**Defendants Christopher A. Wray, Charles H. Kable, IV,
and Jason R. Chambers's Brief in Support of Motion to Dismiss**

---

## STATEMENT OF ISSUES PRESENTED

1.    Whether Plaintiff lacks standing to bring his claims because he has failed to allege any concrete and particularized injury attributable to the actions of Defendants, and has failed to show how an order of this Court would redress his alleged injury.

2.    Whether Plaintiff's Privacy Act claim fails to state a claim upon which relief can be granted, since the Attorney General specifically exempted the National Instant Criminal Background Check System from that Act.

3.    Whether Plaintiff's APA cause of action fails to state a claim upon which relief can be granted, as he fails to identify any law or regulation requiring the agency to take the action he proposes, and fails to properly challenge any final agency action.

4.    Whether Plaintiff's "stigma plus" claim fails to state a claim upon which relief can be granted, since Plaintiff does not allege that Defendants made any stigmatizing statement about him publicly and does not allege that Defendants' actions denied him of a benefit to which he had a legal right.

5.    Whether Plaintiff's 42 U.S.C. § 1981 individual-capacity claim against Defendant Chambers fails to state a claim upon which relief can be granted, since that statute does not apply to federal actors.

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................iii

MOST CONTROLLING AUTHORITY..................................................... iv

TABLE OF AUTHORITIES ....................................................................v

  I. INTRODUCTION...........................................................................1

  II.  BACKGROUND ...........................................................................2

    A.  Statutory and Regulatory Background ..........................................2

    B. Plaintiff's Complaint .................................................................6

  III.   STANDARD OF REVIEW ......................................................8

  IV.   ANALYSIS ...........................................................................9

    A. Plaintiff lacks standing ..............................................................9

    B.  The NICS and TSDB are exempt from the Privacy Act ............................13

    C. Plaintiff's APA claim fails ........................................................15

    D. Plaintiff fails to adequately plead a "stigma plus" violation......................17

    E. Section 1981 does not apply to federal actors...........................................20

  V.  CONCLUSION ..........................................................................22

CERTIFICATION OF SERVICE...........................................................23

## MOST CONTROLLING AUTHORITY

*Turaani v. Sessions, et al.,* 316 F.Supp.3d 998 (E.D. Mich. 2018)

# TABLE OF AUTHORITIES

CASES

*Ailor v. City of Maynardville*, 368 F.3d 587 (6th Cir. 2004)....................................10

*Bartel v. FAA*, 725 F.2d 1403 (D.C. Cir. 1984)......................................................13

*Bd. of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)........19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................................9

*Berry v. U.S. Dep't of Labor*, 832 F.3d 627 (6th Cir. 2016) ...................................15

*Bigelow v. DOD*, 217 F.3d 875 (D.C. Cir. 2000) ....................................................14

*Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) .................19

*Cacho v. Chertoff*, No. 06–00292, 2006 WL 3422548 (D.D.C. Nov. 28, 2006) ....14

*Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014).................................................9

*Chilingirian v. Boris*, 882 F.2d 200 (6th Cir. 1989)................................................18

*Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513
(6th Cir. 2001)..........................................................................................................10

*Coyne v. Am. Tobacco Co.*, 183 F.3d 488 (6th Cir. 1999) ......................................10

*Crawford v. Dep't of Treasury*, 868 F.3d 438 (6th Cir. 2017) ................................11

*Davis v. United States Dep't of Justice*, 204 F.3d 723 (7th Cir. 2000) ...................21

*Davis–Warren Auctioneers, J.V., v. Fed. Deposit Ins. Corp.*, 215 F.3d 1159
(10th Cir. 2000)........................................................................................................21

*Doe v. Michigan Dept. of State Police*, 490 F.3d 491 (6th Cir. 2007) ....................19

*Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005) ......................................................21

*ECM BioFilms, Inc. v. Fed. Trade Comm'n*, 851 F.3d 599 (6th Cir. 2017)............15

*Farag v. United States*, 587 F.Supp.2d 436 (E.D.N.Y. 2008).................................22

*FDIC v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ................16

*Gottschalk v. City and County of San Francisco*, 964 F.Supp.2d 1147 (N.D. Cal. 2013) ....................................................................................................................22

*Gould v. Pechiney Ugine Kulmann & Trefimetaux*, 853 F.2d 445 (6th Cir. 1988)..................................................................................................8,9

*Grendell v. Ohio Supreme Court*, 252 F.3d 828 (6th Cir. 2001)...........................10

*Huddleston v. United States*, 415 U.S. 814 (1974).....................................................2

*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523 (6th Cir. 2007)................................................................................................6,7

*Lee v. Hughes*, 145 F.3d 1272 (11th Cir. 1998) ....................................................21

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) .............................................................................................................16, 17

*Marcus v. Geithner*, 813 F.Supp.2d 11. (D.D.C. 2011)...........................................22

*McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. 2012) ...............................20, 21

*Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266 (6th Cir. 1990).......................................................................................................9

*Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 711 F.3d 662 (6th Cir. 2013)..............................................................................................15, 16

*Norris v. Principi*, 254 F.Supp.2d 883 (S.D. Ohio 2003)......................................22

*Paige v. DEA*, 665 F.3d 1355 (D.C. Cir. 2012) .....................................................14

*Paul v. Davis*, 424 U.S. 693 (1976) ................................................................17, 18

*Quinn v. Shirey*, 293 F.3d 315 (6th Cir. 2002) ......................................................18

*Richardson v. F.B.I.*, 124 F.Supp.2d 429 (W.D. La. 2000), aff'd, 264 F.3d 1141 (5th Cir. 2001)...................................................................................................15

*Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976)......20, 21

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)..................................11, 12

*Turaani v. Sessions, et al.,* 316 F.Supp.3d 998 (E.D. Mich. 2018) .....................2, 13

*Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008).........................................10

*Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509 (6th Cir. 2001) ...................................9

STATUTES AND REGULATIONS

5 U.S.C. § 522a .......................................................................................................14

5 U.S.C. § 551 .........................................................................................................17

5 U.S.C. § 552a ................................................................................................13, 14

5 U.S.C. § 702 ............................................................................................15, 16, 17

5 U.S.C. § 704 .........................................................................................................16

18 U.S.C. §§ 921-931 .....................................................................................2, 4, 5, 11

42 U.S.C. § 1981 ...........................................................................................8, 20, 21, 22

27 C.F.R. § 478.124(c)..............................................................................................3, 4

28 C.F.R. § 16.96 ..............................................................................................14, 15

28 C.F.R. § 25.1 *et seq.*............................................................................................3

28 C.F.R. § 25.6 ...........................................................................................5, 6, 11, 12

28 C.F.R. § 25.7(a).....................................................................................................4

28 C.F.R. § 25.10 .......................................................................................................6

RULES

Federal Rules of Civil Procedure 12(b)(1) .............................................................8, 9

Federal Rules of Civil Procedure 12(b)(6) .................................................................9

OTHER AUTHORITIES

H.R. Rep. No. 103-344 at 7, *reprinted in* 1993 U.S.C.C.A.N. 1984.........................3

# I. INTRODUCTION

The Federal Bureau of Investigation ("FBI") oversees the National Instant Criminal Background Check ("NICS") process for individuals seeking to purchase firearms from federally licensed dealers ("FFLs").  This process serves the important purpose of assisting FFLs in conducting a background check to determine if individuals are legally prohibited from possessing firearms by federal or state law.  Carefully prescribed statutory and regulatory provisions ensure that the government agencies involved in background checks obtain and retain only that information that is necessary to ensure that the process operates efficiently and accurately.

Plaintiff Khalid M. Turaani alleges that his attempt to purchase a firearm in August 2018 was delayed by the FBI, and challenges in this lawsuit certain aspects of that process, alleging that the FBI improperly cross-checks all potential firearms purchasers against databases used to track potential terrorists.  Plaintiff alleges that this in fact happened to him, resulting in a delay of three business days of the firearms dealer's legal authority to complete the transaction for the firearm Plaintiff was attempting to purchase. Plaintiff alleges that this three-day delay violated his rights under the Privacy Act, the Administrative Procedure Act, the "Stigma Plus" doctrine, and the Civil Rights Act. Plaintiff further alleges that, during this three-day delay period, an FBI Special Agent visited the firearms dealer

to inquire about the attempted transaction. Plaintiff alleges that, during this meeting, the FBI Special Agent made disparaging comments about Plaintiff. Plaintiff's claims are not cognizable, and should not proceed past the pleading stage.

In fact, Plaintiff filed a substantially similar lawsuit concerning an attempted June 2017 firearm transaction. This Court dismissed the prior lawsuit at the pleading stage for lack of subject matter jurisdiction, and for failure to state a claim. *See Turaani v. Sessions, et al.,* 316 F.Supp.3d 998 (E.D. Mich. 2018). The same outcome should happen here.

## II.     BACKGROUND

### A.  Statutory and Regulatory Background

The Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921-931, imposes a comprehensive federal regulatory scheme over the manufacture and distribution of firearms and ammunition.  Congress's "principal purpose" in enacting federal gun control legislation "was to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency."  *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (citation and internal punctuation omitted). The Gun Control Act imposes restrictions on the receipt, possession, shipment, and transfer of firearms and ammunition in or affecting interstate or foreign commerce.

In 1993, the Brady Act amended the Gun Control Act to require background checks of persons attempting to purchase firearms, in order to identify individuals whom the Gun Control Act or state law bars from possessing firearms. *See* H.R. Rep. No. 103-344 at 7, *reprinted in* 1993 U.S.C.C.A.N. 1984. The Brady Act directed the Attorney General to establish and operate a nationwide background check system that licensed firearms dealers could contact, by phone or electronically, to check whether information in the system indicates that transfer of a firearm to a particular individual would be prohibited. *See* 18 U.S.C. §§ 922(t)(1) & (t)(2). Under the authority delegated in the Brady Act, the Attorney General established the NICS, *see* 28 C.F.R. § 25.1 *et seq*., and assigned management of the NICS to the FBI, *see* 28 C.F.R. § 25.3.

As a general matter, the purchase of a firearm from a federally licensed dealer proceeds in two phases. In the first phase, a potential purchaser completes a Firearms Transaction Record ("Form 4473"), a form created by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which asks for certain identifying information, such as the purchaser's name, sex, residence address, date and place of birth, height, weight, race, and country of citizenship. 27 C.F.R. § 478.124(c)(1). A purchaser must also complete a certification that he or she is not prohibited by the Gun Control Act from receiving a firearm. *Id*. A purchaser has the option of providing additional identifying information, such as his or her

Social Security number, to help facilitate the NICS background check. *Id*.

§ 478.124(c)(2).

In the second phase of the process, the licensed dealer submits to the NICS

via the FBI or a point-of-contact state agency[2] the following information about the

potential purchaser: name, sex, race, date of birth, and state of residence. *See* 28

C.F.R. § 25.7(a). A background check is then performed using this information, to

search three national databases: (1) the National Crime Identification Center

(NCIC), containing records on wanted persons, protection orders, and other

persons identified as relevant to NICS searches, including a sub-file of Known or

Suspected Terrorists (KST); (2) the Interstate Identification Index (III), which

contains criminal history records; and (3) the NICS Index, which contains

information on prohibited persons as defined in 18 U.S.C. § 922(g) or (n), and state

law. *See* 28 C.F.R. §§ 25.6(c)(1)(iii), 25.6(f). The purpose of the check is to

determine whether the individual attempting to purchase a firearm falls into one of

the categories of persons prohibited from receiving or possessing firearms under

federal or state law.[3] *See* 18 U.S.C. § 922(t)(2); 28 C.F.R. § 25.1.

---

[2]  In Michigan, there is no relevant point-of-contact state agency for background checks, so all FFLs contact the NICS.

[3]  Categories of persons prohibited from receiving or possessing firearms under federal law are set forth in 18 U.S.C. § 922(g) and (n): (1) persons convicted of a crime punishable by imprisonment for a term of more than one year; (2) fugitives from justice; (3) unlawful users of or those addicted to any controlled substance;

If the NICS check reveals no record indicating the person seeking to purchase a firearm is a prohibited person, the NICS generates a "proceed" response. If the background check reveals information demonstrating that either state or federal law prohibits the transfer, the transfer is denied.  18 U.S.C. § 922(t). If the search finds that a record requires more research to determine whether the prospective transferee might be prohibited from possessing a firearm by state or federal law, the transfer is delayed. 28 C.F.R. § 25.6(c)(1)(iv)(B). A match to the NCIC KST sub-file is not a federal basis for denial of a firearm but may generate a "delay" response until it is determined whether or not the person in question is legally eligible to purchase a firearm. The NCIC KST file is used for NICS purposes, to contact federal officers to determine whether or not they possess records in their investigative files which have not been entered into the databases checked initially by NICS that would prohibit the transfer of a firearm under 18 U.S.C. § 922(g) or (n) or state law. However, if there is no information demonstrating that a person is prohibited, or if three business days elapse, the

---

(4) persons adjudicated as mentally defective or committed to a mental institution; (5) aliens illegally or unlawfully in the United States, or admitted to the United States pursuant to a non-immigrant visa; (6) persons discharged from the military under dishonorable conditions; (7) persons who have renounced their United States citizenship; (8) persons subject to certain types of restraining orders; (9) persons who have been convicted of a misdemeanor crime of domestic violence; and (10) persons under indictment for a crime punishable by a term exceeding one year. 18 U.S.C. § 922(g)(1)-(9), (n).

transfer is allowed to proceed at the FFL's discretion. *See* 28 C.F.R. § 25.6(c).

When a hit occurs in one of the three databases based on a transaction initiated by

a telephone call from the FFL, the FFL remains on the line and is transferred to the

FBI, at which time a NICS examiner reviews the responses and determines if a

"delay" response is appropriate. When a "delay" response is issued based on a

transaction submitted electronically (NICS E-check), the FFL receives the

transaction status when he or she signs into his or her E-check account to receive

the response.

Individuals who were denied a firearms purchase following a NICS

background check may apply to either the FBI or point-of-contact state agency to

request the reasons for the denial. 28 C.F.R. § 25.10(a).  The denying agency must

respond within five days. *Id*. § 25.10(b). Such individuals may also challenge the

accuracy of the record upon which the denial was based, or may demonstrate that

their rights to possess a firearm have been restored. *Id*. § 25.10(c).

### B. Plaintiff's Complaint

The relevant facts of this case, as alleged by Plaintiff in his Complaint, are

as follows.[4] Plaintiff alleges that he is a United States citizen who, on August 5,

---

[4]  For the purposes of this motion, Defendants treat all allegations contained in
Plaintiff's Complaint as true, as they must at this early stage of the litigation. *See*
*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.
2007) (citation omitted).  However, nothing in this brief should be construed as an
admission or concession to any allegation made by Plaintiff.  In particular,

2018, attended the Birch Run Gun Show and attempted to purchase a firearm. (Dkt. 1, Compl. ¶¶ 21, 39, 41). The FFL or dealer initiated an NICS background check, and then informed Plaintiff that he received a "delay" response from the system. (*Id.* ¶ 42). The dealer then told Plaintiff to contact him after three days passed, and that he could likely sell Plaintiff the firearm at that time. (*Id.* ¶ 43). Plaintiff contacted the dealer again at the end of that week, and the dealer told Plaintiff that an FBI agent, who Plaintiff alleges was Defendant Chambers, showed up at the dealer's residence (which is also the dealer's place of business), in Goodrich, Michigan on August 6, 2018 (the day after Plaintiff's attempted purchase), to speak with the dealer about Plaintiff. (*Id.* ¶ 45). The FBI agent then allegedly told the dealer "we have a problem with the company he [Plaintiff] keeps." (*Id.* ¶ 47).

The FBI agent allegedly showed the firearms dealer a photograph of Plaintiff in a suit, with one other individual, who Plaintiff claims was of Middle Eastern descent, and asked the dealer if he recognized the other individual in the photograph. (*Id.* ¶ 48). The dealer later told Plaintiff that the dealer did not recognize the other individual in the photograph, since he does not keep up with politics, and that he had informed Defendant Chambers of that as well. (*Id.* ¶ 50).

---

Defendants note that federal investigations are a matter of extraordinary sensitivity, and Defendants cannot and do not confirm or deny whether Plaintiff is now or has ever been under federal investigation.

Defendant Chambers allegedly left his contact information with the dealer, and asked the dealer to pass it along to Plaintiff. (*Id.* ¶ 51). The dealer then informed Plaintiff that while he legally could sell the gun to Plaintiff because the three days had expired, and Plaintiff's status was by then listed on NICS as "open," the dealer now was no longer comfortable doing so because of the visit and statements made by the FBI agent regarding Plaintiff. (*Id.* ¶ 52).

Plaintiff names as Defendants Christopher A. Wray, Director of the FBI, and Charles H. Kable, IV, Director of the Terrorist Screening Center (which maintains the Terrorist Screening Database (TSDB)), in their official capacities. Plaintiff also names and brings an individual capacity *Bivens* claim against FBI Special Agent Jason R. Chambers. Plaintiff seeks declaratory and injunctive relief, as well as compensatory damages, attorney's fees, and all costs and expenses. (Dkt. 1, Prayer for Relief ¶¶ 1-5 PageID.25-26).

### III.   STANDARD OF REVIEW

A motion under Rule 12(b)(1) to dismiss a complaint for lack of subject matter jurisdiction must be considered prior to other challenges since proper jurisdiction is a prerequisite to determining the validity of a claim. *See Gould v. Pechiney Ugine Kulmann & Trefimetaux*, 853 F.2d 445, 450 (6th Cir. 1988). The plaintiff has the burden of proving jurisdiction in order to survive a motion to dismiss. *See Moir v. Greater Cleveland Regional Transit Auth., 895* F.2d 266, 269

(6th Cir. 1990). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id*. "A factual attack challenges the factual existence of subject matter jurisdiction…[and] a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings." *Id*. at 759-60.

In assessing a Rule 12(b)(6) motion, the district court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Ziegler v. IBP Hog Mkt., Inc*., 249 F.3d 509, 512 (6th Cir. 2001). The factual allegations of the complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## IV.   ANALYSIS

### A. Plaintiff lacks standing

All of Plaintiff's claims fail for lack of standing. "Standing is the 'threshold

question in every federal case.'" *Grendell v. Ohio Supreme Court*, 252 F.3d 828,

832 (6th Cir. 2001) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th

Cir. 1999)). Article III's case and controversy requirement is not satisfied when a

claimant lacks standing, which is "a sufficiently concrete and redressable interest

in the dispute." *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (en

banc). To establish standing, a plaintiff must show "(1) he or she has suffered an

'injury in fact' that is (a) concrete and particularized and (b) actual or imminent . . .

; (2) the injury is fairly traceable to the defendant's challenged action; and (3) it is

likely, not speculative, that the injury will be redressed by a favorable decision."

*Ailor v. City of Maynardville*, 368 F.3d 587, 596 (6th Cir. 2004) (citing *Cleveland*

*Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 523-24 (6th Cir. 2001)).

Plaintiff does not have standing in this case because he has not alleged a

concrete injury that is traceable to the actions of Defendants.  Plaintiff does not

claim that Defendants have prohibited him from possessing firearms, and he

conceded in prior litigation that he already owns three firearms. *See Turaani*, 316

F.Supp.3d at 1005.  Plaintiff also does not claim that Defendants issued a "denial"

response to his attempted firearm purchase, which would have legally barred the

dealer from completing the transaction.

While Plaintiff alleges that Defendants did issue a "delay" response, he

concedes that the response did not prohibit the dealer from completing the

10

transaction after a three-business day delay. (Dkt. 1, Compl. at 14 n.11 (stating that after three business days expire after a "delay" response is given, federal firearms licensees are "permitted, *at their discretion*, to transfer firearms")) (citing 28 C.F.R. § 25.6(c)(1)(iv)(B)) (emphasis added). Plaintiff cannot establish standing based on that delay in his purchase, because the delay has already expired and is no longer redressable by any action of this Court. Plaintiff therefore has not identified any non-speculative, imminent injury caused by Defendants that can serve as the basis for Article III standing.

Furthermore, "[w]hen a plaintiff's alleged injury is the result of 'the independent action of some third party not before the court,' the plaintiff generally lacks standing to seek its redress." *Crawford v. Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976)). To the extent Plaintiff was unable to purchase his desired firearm, his inability resulted from the independent decisions and actions of a third-party – the gun dealer – not Defendants' actions. The applicable regulations and statute (18 U.S.C. § 922(t)(1)(B)(ii)) make clear that a "delay" response only prohibits an FFL from not completing a firearms transfer for three business days. If no "denied" instruction from NICS is received within that three-day period, then the transfer may proceed:

> A "Delayed" response to the FFL indicates that the firearm transfer
> should not proceed pending receipt of a follow-up "Proceed" response

from the NICS or the expiration of three business days (exclusive of the day on which the query is made), *whichever occurs first*.  (Example: An FFL requests a NICS check on a prospective firearm transferee at 9:00 a.m. on Friday and shortly thereafter receives a "Delayed" response from the NICS.  If state offices in the state in which the FFL is located are closed on Saturday and Sunday and open the following Monday, Tuesday, and Wednesday, and the NICS has not yet responded with a "Proceed" or "Denied" response, *the FFL may transfer the firearm at 12:01 a.m. Thursday*.)

28 C.F.R. § 25.6(c)(1)(iv)(B) (emphasis added). Plaintiff does not contest the fact that the gun dealer could have completed the transaction, and sold him the firearm, after three business days had expired. He does not allege that Defendants gave the gun dealer any sort of instruction that the dealer should not complete the transaction at the end of the three business day period. As the Sixth Circuit has held, where the alleged injury is caused by the actions "'of some third party not before the court,' the plaintiff generally lacks standing to seek its redress." *Crawford*, 868 F.3d at 455 (quoting *Simon*, 426 U.S. at 42).

Because Plaintiff has failed to establish the existence of a concrete, particularized injury that is traceable to any action of Defendants, and has failed to demonstrate that an order of this Court would actually redress his alleged injury, Plaintiff lacks standing and his Complaint should be dismissed by the Court for lack of subject-matter jurisdiction.

Indeed, this Court dismissed Plaintiff's prior, substantially similar, lawsuit for lack of standing. *See Turaani v. Sessions,* 316 F.Supp.3d 998 (E.D. Mich.

2018). The same outcome should happen here.

**B.  The NICS and TSDB are exempt from the Privacy Act**

Count One of Plaintiff's Complaint alleges a Privacy Act violation, against

Defendant Wray and Kable. "The Privacy Act safeguards the public from

unwarranted collection, maintenance, use and dissemination of personal

information contained in agency records ... by allowing an individual to participate

in ensuring that his records are accurate and properly used, and by imposing

responsibilities on federal agencies to maintain their records accurately." *Bartel v.

FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984) (footnotes omitted). Subsection (g) of

the Privacy Act provides four scenarios under which an individual may bring a

civil cause of action against a federal agency, *see* 5 U.S.C. § 552a(g)(1)(A)-(D),

but monetary recovery for actual damages, as opposed to injunctive relief, is

available only for claims brought under two provisions – § 552a(g)(1)(C) for

failure to maintain accurate records, and § 552a(g)(1)(D) for failure to comply with

other provisions of the Privacy Act if the agency acted intentionally or willfully.

*See id*. § 552a(g)(4).

Plaintiff does not appear to allege that the FBI failed to maintain accurate

records about him. Rather, Plaintiff alleges that the FBI improperly disclosed

information about him. Subsection 552a(g)(1)(D), which is described as the

Privacy Act's "catchall" provision, *see Cacho v. Chertoff*, No. 06–00292, 2006

13

WL 3422548, at *4 (D.D.C. Nov. 28, 2006), provides a civil cause of action

whenever a government agency "fails to comply with any other provision of this

section, or any rule promulgated thereunder, in such a way as to have an adverse

effect on an individual." 5 U.S.C. § 552a(g)(1)(D). Thus, to state a claim for relief

under this subsection, which works in conjunction with § 552a(g)(4), a plaintiff

must establish that: (1) the agency violated another provision of the Privacy Act,

(2) the violation was intentional or willful, and (3) the violation had an adverse

effect on the plaintiff. *See Paige v. DEA*, 665 F.3d 1355, 1358–59 (D.C. Cir. 2012)

(citing 5 U.S.C. §§ 552a(g)(1)(D) & 552a(g)(4)). Subsection 552a(b) of the

Privacy Act generally prohibits government agencies from disclosing confidential

files without the consent of the individual. *See Bigelow v. DOD*, 217 F.3d 875, 876

(D.C. Cir. 2000).

However, the Privacy Act also permits heads of federal agencies to exempt

systems of records from that Act, when such systems are maintained to enforce

criminal laws. *See* 5 U.S.C. § 522a(j)(2). Based on this subsection, the Attorney

General has explicitly exempted the NICS from the Privacy Act. *See* 28 C.F.R. §

16.96(p)(1). As part of this exemption, the Department of Justice specifically

removed the NICS from the Privacy Act's grant of a civil cause of action, 5 U.S.C.

522a(g). Furthermore, to the extent that Plaintiff's Privacy Act claim is read to

include improperly releasing information from the Terrorist Screening Database,

the Attorney General similarly exempted the Terrorist Screening Records System from the Privacy Act. *See* 28 C.F.R. § 16.96(r).

Plaintiff fails to state a viable Privacy Act claim, since the Attorney General specifically exempted the NICS (and TSDB) from that Act. *See Richardson v. F.B.I.*, 124 F.Supp.2d 429, 431 (W.D. La. 2000), aff'd, 264 F.3d 1141 (5th Cir. 2001) (the plaintiff failed to state Privacy Act claim related to denial of firearms transfer, as NICS is exempt from Privacy Act).

### C. Plaintiff's APA claim fails

Count Two of Plaintiff's Complaint is brought under the APA, against Defendant Wray and Kable. "The APA authorizes aggrieved individuals to seek judicial review of agency decisions, subject to certain conditions." *Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 632 (6th Cir. 2016) (citing 5 U.S.C. § 702). And it "requires [courts] to uphold agency action unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *ECM BioFilms, Inc. v. Fed. Trade Comm'n*, 851 F.3d 599, 612 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 711 F.3d 662, 667 (6th Cir. 2013)).

Plaintiff brought an APA claim in his prior litigation, and this Court dismissed it. *See Turaani*, 316 F.Supp. 3d at 1014-15. In this case, the entirety of

Plaintiff's APA claim is contained in a single conclusory paragraph of his

Complaint:

> Defendants Wray and Kable, via the actions of their agents
> and/or representatives, took actions without observance of
> their own prescribed procedures when the agencies failed
> to follow the relevant NICS policies explicitly prohibiting
> any additional disclosure other than the automatic
> response of a "proceed" "delay" or "deny" notification
> after a NICS inquiry. (Dkt. 1, Compl. ¶ 99, PageID.21).

This allegation is simply not sufficient to state a valid APA claim. The APA

waives the federal government's sovereign immunity for a limited set of suits,

brought by "a person suffering legal wrong because of agency action" to obtain

relief "other than money damages." 5 U.S.C. § 702. It is well-established that

"[s]overeign immunity is jurisdictional in nature" and "absent a waiver ... shields

the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471,

475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Moreover, judicial review under the

APA is limited to "final agency actions." 5 U.S.C. § 704. As a threshold matter,

"the person claiming a right to sue must identify some 'agency action' that affects

him in the specified fashion; it is judicial review 'thereof' to which he is entitled."

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695

(1990). The APA defines "agency action" to include "the whole or a part of an

agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or

failure to act." 5 U.S.C. § 551(13).

The agency "decision" challenged by Plaintiff is the FBI's disclosure of information beyond the NICS's automated response of "proceed," "delay," or "deny." (Dkt. 1, Compl. ¶ 99, PageID.21). However, this "decision" is simply not an "agency action" that is reviewable under the APA. *See* 5 U.S.C. § 551(13). An FBI decision to follow-up with a federally licensed gun dealer after an NICS delay response, without more, is clearly not a "rule," "order," "license," "relief," or "the equivalent thereof." *Id*. § 551(4), (6), (8), (11), (13). Nor is it a "sanction," which requires some "compulsory or restrictive action." *Id*. § 551(10). As such, Plaintiff has failed to plead a valid APA claim.

### D. Plaintiff fails to adequately plead a "stigma plus" violation

Count Three of the Complaint alleges a "stigma plus" violation by Defendants Wray and Kable. To state a "stigma plus" claim, a plaintiff must allege the public disclosure of a stigmatizing statement by the Government, the accuracy of which is contested, plus the denial of "some more tangible interest or the alteration of a right or status recognized by state law." *Paul v. Davis*, 424 U.S. 693, 701, 733 (1976). Plaintiff's claim fails on both counts. Even under a generous reading of the publication element, the FBI's private consultation with a single federally licensed firearms dealer was not public disclosure in any form or manner. And, even if the allegedly defamatory statements were made public, Plaintiff has not connected the FBI's communications to a cognizable "plus" factor that

supports his constitutional claim. In the prior litigation, Plaintiff raised a very similar reputational damage claim, and this Court dismissed it. *See Turaani*, 316 F. Supp.3d at 1010.

"[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989)). However, damage to reputation alone is insufficient to infringe on an individual's due process rights. In *Paul v. Davis*, 424 U.S. 693 (1976), the Supreme Court stated that a plaintiff may not recover for damages to his reputation if the alleged defamatory acts did not also result in the deprivation of a constitutionally protected right or interest. *Id*. In *Paul*, the Supreme Court found that "[t]he interest in reputation alone which respondent seeks to vindicate ... is quite different from the liberty or property [interests] recognized in [the Court's due process jurisprudence]." *Id*. at 711. The Supreme Court held that a successful plaintiff must show more than an injury to their reputation; there must also be a deprivation "of a right previously held under state law[.]" *Id*. at 709. "A successful plaintiff must therefore show that the state's action both damaged his or her reputation (the stigma) and that it 'deprived [him or her] of a right previously held under state law' (the plus)." *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 502 (6th Cir. 2007) (quoting *Paul*, 424 U.S. at 708).

A stigmatic statement is a statement that "might seriously damage [the plaintiff's] standing and associations in his community." *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Because the defamatory statement must affect one's standing in the community, to satisfy the "stigma" prong of the test, a plaintiff must allege that the purportedly stigmatizing statements were made publicly. *See Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

As pled, Plaintiff's Count Three fails both the "stigma" and the "plus" prongs. First, Plaintiff does not allege that Defendants have disclosed any information about Plaintiff to the general public. Rather, Plaintiff alleges that Defendant Chambers discussed Plaintiff with a single gun dealer in a private conversation. Plaintiff does not allege, for example, that Defendants disseminated a public list of persons to whom guns should not be sold, or that such a list is posted online or at gun retailers. The closest Plaintiff comes to alleging community reputational harm is claiming – "The actions and communications by the Defendants through Defendant Chambers and, upon information and belief, other representatives, injured Plaintiff's standing in the community, because firearm sellers are reluctant and/or unwilling to sell him a firearm or otherwise associate with him." (Dkt. 1, Compl. ¶ 104). This conclusory allegation is not sufficient to state a viable "stigma plus" claim against Defendants. The Complaint contains no

19

allegation that Defendants published information to the public about Plaintiff that was somehow injurious to his reputation. As such, Plaintiff has not adequately alleged that Defendants stigmatized him.

Moreover, even assuming Plaintiff had adequately alleged the "stigma" prong of the test, he has not adequately alleged a change in legal status under the "plus" prong. Plaintiff nowhere alleges that the FBI's actions deprived him of any right under federal or state law. To the contrary, Plaintiff alleges that when he re-contacted the gun dealer, the NICS system listed his status as "open." (Dkt. 1, Compl. ¶ 52, PageID.12). Thus the gun dealer, in his discretion, could have legally transferred the firearm to Plaintiff at that time.

### E. Section 1981 does not apply to federal actors

Finally, Plaintiff asserts a claim under 42 U.S.C. § 1981 against Defendant Chambers, in his individual capacity. "Section 1981 prohibits racial discrimination in the making and enforcement of contracts." *McCormick v. Miami Univ*., 693 F.3d 654, 659 (6th Cir. 2012) (citing *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976)).

Plaintiff's § 1981 claim fails for a simple reason – Defendant Chambers is an FBI Special Agent, and § 1981, by its explicit language, protects certain enumerated rights "against impairment by nongovernmental discrimination and

impairment under color of *State* law." 42 U.S.C. § 1981(c) (emphasis added). This

language simply "does not apply to actions taken under color of federal law."

*Davis v. United States Dep't of Justice*, 204 F.3d 723, 725 (7th Cir. 2000) (per

curiam) (affirming the dismissal of the plaintiff's § 1981 suit against individual

defendants acting "in their capacity as federal employees for actions authorized by

the Fair Housing Act"); *see also Davis–Warren Auctioneers, J.V., v. Fed. Deposit*

*Ins. Corp.*, 215 F.3d 1159, 1161 (10th Cir. 2000) (holding, based on the "clear"

language of the statute, "that § 1981 is inapplicable to alleged discrimination under

color of federal law"); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998)

("Section 1981 provides a cause of action for individuals subjected to

discrimination by private actors and discrimination under color of state law, but

does not provide a cause of action for discrimination under color of federal law.");

*Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005) (civil rights statute, § 1981,

protecting right to contract from any impairment by nongovernmental

discrimination or under color of state law does not apply to federal governmental

actors; phrase "under color of state law" prohibits impairment of contract rights

only by state actors); *Gottschalk v. City and County of San Francisco*, 964

F.Supp.2d 1147 (N.D. Cal. 2013) (same); *Marcus v. Geithner*, 813 F.Supp.2d 11.

(D.D.C. 2011) (federal employees may not be held liable under § 1981); *Norris v.*

*Principi*, 254 F.Supp.2d 883 (S.D. Ohio 2003) (§ 1981 is not a waiver of United

States' sovereign immunity from suit, as statute did not mention that it protected

right against discrimination by those acting under color of federal law); *Farag v.*

*United States*, 587 F.Supp.2d 436, 471 (E.D.N.Y. 2008) (airline passengers

detained after flight landed could not sustain § 1981 individual-capacity *Bivens*

claims against counterterrorism agents, where agents were federal actors).

The acts of which Plaintiff complains arise from Defendant Chambers's

actions as a federal official, an FBI Special Agent. Plaintiff's § 1981 individual-

capacity claim against Defendant Chambers should be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to

dismiss Plaintiff's Complaint.

Respectfully submitted,

**MATTHEW SCHNEIDER**
United States Attorney

*/s/ Bradley H. Darling*
BRADLEY H. DARLING (P63176)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9137
Bradley.Darling@usdoj.gov

Dated: December 19, 2019

## CERTIFICATION OF SERVICE

I hereby certify that on December 19, 2019, I electronically filed the

foregoing paper with the Clerk of the Court using the ECF system, which will send

notification of such filing to the ECF participants in this case.


*/s/ Bradley H. Darling*
BRADLEY H. DARLING (P63176)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
(313) 226-9137
Bradley.Darling@usdoj.gov
