# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION
_____

KHALID M. TURAANI,

    Plaintiff,

v.                                                Case No. 19-11768

CHRISTOPHER A. WRAY,
CHARLES H. KABLE, IV, and
JAYSON R. CHAMBERS,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff Kahlid M. Turaani sues Defendants Christopher A. Wray, Director of the Federal Bureau of Investigation ("FBI"), Charles H. Kable, IV, Director of the Terrorist Screening Center ("TSC"), and Jayson R. Chambers, an FBI agent. (ECF No. 1, PageID.3-4, ¶¶ 5-7; ECF No. 14, PageID.101.) Plaintiff asserts violations of the Privacy Act, 5 U.S.C. § 552a(b), the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, procedural due process, and 42 U.S.C. § 1981. (ECF No. 1, PageID.17-25, ¶¶ 81-123.) Defendants allegedly prevented Plaintiff from purchasing a firearm by approaching the would-be seller and disclosing confidential information about Plaintiff.

Defendants move to dismiss the complaint for lack of standing and for failure to state a claim. (ECF No. 14.) Plaintiff has responded. (ECF No. 17.) The court finds a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons provided below, Defendants' motion will be granted and the case will be dismissed.

## I. BACKGROUND

The following are facts as alleged in Plaintiff's complaint. In a motion to dismiss, the court accepts Plaintiff's factual allegations as true but makes no overt finding as to truth or falsity. *Kardules v. City of Columbus*, 95 F.3d 1335, 1347 (6th Cir. 1996) (discussing standing); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (regarding failure to state a claim).

On Sunday, August 5, 2018, Plaintiff attended a gun show in Birch Run, Michigan. (ECF No. 1, PageID.10, ¶ 39.) While there, Plaintiff attempted to purchase a firearm. (*Id.*, ¶ 41.) The seller of the firearm received a "delay" response from the National Instant Criminal Background Check ("NICS"), a system designed and operated by the FBI to conduct rapid background checks for proposed firearm purchases. 28 C.F.R. § 25.6(c)(1)(iv)(B) ("A 'Delayed response . . . indicates that the firearm transfer should not proceed pending receipt of a follow up 'Proceed' response from NICS or the expiration of three business days . . . whichever occurs first."). (*Id.*, ¶ 42.) The seller informed Plaintiff that the gun could not be sold *at that time*, but that Plaintiff could return in three days to complete the purchase. (*Id.*, PageID.10-11, ¶¶ 43-44.) Plaintiff does not contest that the FBI background check and a "delay" response were ordinary and legal.

Plaintiff contacted the seller at the end of the week. (*Id.*, PageID.11, ¶ 45.) The seller told Plaintiff that an FBI agent, believed to be Defendant Chambers, visited the seller's place of business the day after Plaintiff's purchase inquiry. (*Id.*) The agent asked the seller what Plaintiff had "filled out himself regarding the attempted purchase," told the seller that "we have a problem with the company [Plaintiff] keeps," and showed the

seller a photograph of Plaintiff "in a suit" with another individual believed to be "of Middle Eastern descent," asking the seller if he recognized the other individual. (*Id.*, ¶¶ 46-48.) The agent then left contact information, including an email address for "JR Chambers," and asked that the seller pass the information along to Plaintiff. (*Id.*, PageID.12, ¶ 51.)

When Plaintiff contacted the seller some time later, the seller told Plaintiff that he chose to not sell the gun to Plaintiff, even though enough time had passed to allow a legally cleared transaction, *i.e.,* Plaintiff's background check was now listed as "open" after the three day "delay" period. (*Id.*, ¶ 52.) The seller explained to Plaintiff that he "was no longer comfortable [selling Plaintiff the weapon] because of the visit by and statements made by the FBI agent regarding Plaintiff." (*Id.*)

## II. STANDARD

Article III Section 2 of the U.S. Constitution limits judicial power to cases and controversies. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). "Standing to sue is a doctrine rooted in the traditional understanding of a case and controversy." *Id.* "The Supreme Court has enumerated the following elements necessary to establish standing:

> First, Plaintiff must have suffered an injury in fact–an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Parsons v. U.S. Dept. of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). When reviewing a motion to dismiss on the basis of standing, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."

3

*Kardules*, 95 F.3d at 1347 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). The plaintiff does, however, bear the burden of establishing standing and must "clearly allege facts demonstrating each element." *Parsons*, 801 F.3d at 710 (quoting *Warth*, 422 U.S. at 518).

### III. DISCUSSION

Standing has three elements: injury in fact, traceability, and redressability. *Parsons*, 801 F.3d at 710. For injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1548 (citations removed). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (citations removed). To be concrete, an injury "must be *de facto*; that is, it must actually exist." *Id.*

The requirement of alleging an injury-in-fact is met in this case. Plaintiff is alleging a violation of his right to purchase a firearm. (ECF No. 1, PageID.16, ¶¶ 91 (For Plaintiff's Privacy Act claim: "[B]ut for the actions of Defendants, the gun seller would have sold Plaintiff the gun after the delay notification expired."), 111-13 (Plaintiff's procedural due process claim), 123 (Plaintiff's § 1981 claim).) In Plaintiff's response to Defendants' motion, Plaintiff relies only upon this injury to establish standing.[1] (ECF No.

---

[1] The court will take Plaintiff's arguments as they are presented, as it is not the job of the court to search out and develop other potentially successful issues or strategies. *Estate of Barnwell v. Grigsby*, -- Fed. App'x --, 2020 WL 290425, at *13 (6th Cir. 2020) (citing *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1154-55 (6th Cir. 2010)) ("[A]n issue not raised in an opening brief is deemed waived."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations removed) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developing argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

4

17, PageID.139 (emphasis and citations removed) ("Plaintiff's Complaint challenges the prohibited disclosure and interference by the FBI and/or its agents that make any sale of a firearm impracticable following the delay notification the NICS search produces when Plaintiff attempts to purchase a firearm."); *id.*, PageID.141 ("Plaintiff's complaint satisfies [the] traceability requirement, as it sufficiently demonstrates that but for Defendants' prohibited disclosures and interference with Plaintiff's attempted gun purchase, the seller would have sold Plaintiff the firearm.").) Being denied the right to purchase a firearm is concrete and real. *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008) ("[T]he Second Amendment conferred an individual right to keep and bear arms"); *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 282-84 (6th Cir. 1997) (finding injury-in-fact to where manufacturers and middlemen could not engage in firearm commercial transactions). It is also particularized to Plaintiff himself. *Magaw*, 132 F.3d at 282-84.

The court's finding conforms to the reasoning of another judge of this court who dismissed a very similar lawsuit filed by Plaintiff in 2018, in part for lack of standing. *Turaani*, 316 F.Supp.3d 998 (Drain, J.). There too Plaintiff alleged that FBI agents made an illegal communication to a gun seller supposedly revealing that Plaintiff was under FBI investigation. *Id.* at 1005-06. Plaintiff also included a claim that he was harmed due to a three-day delay, initiated by NICS.[2] 28 C.F.R. § 25.6(c)(1)(iv)(B). After the three-day delay, the seller allegedly refused to sell a firearm to Plaintiff, despite being legally entitled to do so. *Id.* Plaintiff alleged that the seller would not sell Plaintiff a firearm due to the FBI's communication. *Id.* The lawsuit named an FBI agent, the U.S. Attorney

---

[2] Here, Plaintiff affirmatively states that he "does not challenge the three-day delay . . . in this suit." (ECF No. 17, PageID.139.)

General, the Director of the FBI, the Director of the TSC, and the Deputy Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives as defendants. *Id.* at 1004. The court found that Plaintiff had alleged an injury in fact. *Id.* at 1007. The court reasoned that the "constructive denial," in which the gun seller was influenced by the call from the FBI to not sell Plaintiff a weapon, was particularized because it "impact[ed] [Plaintiff's] individual right to obtain a firearm." *Id.* The injury was concrete because "[Plaintiff] contend[ed] that the delay transpired and that the store clerk continues to deny his request to purchase the gun." *Id.* Additionally, the court found that the three-day delay itself constituted an injury in fact. *Id.*

The central issue in dispute is traceability. When "standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," the plaintiff must "adduce facts showing that those choices have been or will be made in such a manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)).

*Crawford v. S. Dep't of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017) is especially instructive. The plaintiffs in *Crawford* challenged the Foreign Account Tax Compliance Act ("FATCA"), as well as other newly enacted banking statutes and international agreements. The new laws mandated that foreign financial institutions ("FFIs") disclose banking information of Americans and threatened significant fines if the institutions did not comply. The plaintiffs alleged that foreign banks refused to provide financial services to them and required additional disclosures, more than what the law demanded, due to

6

increased compliance costs. The court classified the plaintiff's alleged harms as "indirect" and affirmed dismissal of the complaint for lack of standing. *Id.* at 456. The court reasoned that "Plaintiffs' alleged harms arise not from the FFIs' acting under the *command* of FATCA or an IGA, but rather from the FFI's voluntary choice to go *above and beyond* FATCA and the IGAs." *Id.* at 457 (emphasis in original). It added that "although an injury 'produced by' a defendant's 'determinative or coercive effect' upon a third party . . . may suffice for standing, an injury that results from the third party's voluntary and independent actions or omissions does not." *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017) (citing *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). The court used the law that barred doctors from performing abortion procedures in the Supreme Court case *Roe v. Wade*, 410 U.S. 113 (1973) as an example of a "determinative or coercive effect." *Id.*

Taking the allegations in Plaintiff's complaint as true, Plaintiff has failed to establish traceability. *Kardules*, 95 F.3d at 1347. Plaintiff's essential argument is that Defendants' actions, by organizing and effectuating a background-check review process and their discussion with Plaintiff's commercial counterpart, brought about the seller's reluctance to sell Plaintiff a firearm. Thus, Plaintiff was allegedly denied the right to obtain a weapon. What Plaintiff misses is any factual allegations tying a "determinative and coercive" government action, approaching the force of law, to his inability to purchase a gun. *Crawford*, 868 F.3d at 457. It may be true that an FBI agent, potentially Defendant Chambers, approached the seller and disclosed confidential information that *could* impact a seller's decision. However, merely acting to potentially influence the "voluntary and independent" decision of a third-party does not itself create a direct and

7

traceable injury. *Id.* (denying standing for plaintiffs who allegedly lost access to foreign bank accounts due to the banks' attempts to avoid increased compliance costs incurred by a new law); *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 666-70 (6th Cir. 2007) (finding traceability lacking where plaintiffs alleged that an illegal government wiretap program chilled overseas parties from talking to plaintiffs via phone); *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40-46 (1976) (ruling that plaintiffs lacked standing to sue the government for denial of medical care allegedly due to a tax incentive provided to hospitals); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013) (Despite government actors requesting authorization for surveillance ex parte and plaintiffs claiming that it there is an "objectively reasonable likelihood" that a court would approve a request for surveillance, the Court noted its "reluctan[ce] to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment" and found redressability lacking).

Plaintiff includes no allegations that the FBI applied force or coercion, or otherwise called upon legal authority to command the seller to cutoff transactions with Plaintiff. *Crawford*, 868 F.3d at 457 (finding legal *commands* directed at third-party doctors sufficient to establish standing for patients of those doctors); *Turaani*, 316 F.Supp.3d 998 (ruling an authoritative *directive* not to sell Plaintiff a weapon for three days traceable to the government); *Michigan Bldg. and Const. Trades Council v. Snyder*, 846 F.Supp.2d 766, 778 (E.D. Mich. 2012) (finding standing where a contracting party "do[es] not have discretion" to contract under the law and "there are no breaks in the chain of causation between . . . the government action and the asserted injury.").

8

The seller's statement to Plaintiff that he was motivated to refuse a firearm sale with Plaintiff following, or even due to, a discussion with the FBI cannot alone establish requisite "compulsion." (ECF No. 1, PageID.12, ¶¶ 52, 55.) An assertion of influence short of a "determinative and coercive effect" is insufficient. *Crawford*, 868 F.3d at 457. If this were not true, a plaintiff need only allege that a third party was motivated to bring about a harm because of the separate and distinct actions of a defendant, however attenuated may have been the "effect," and however free to act was the third party. An assailant motivated by a deranged reading of a children's novel could make the novel's author liable to victims, and a customer could sue the government for losing business with a bank due to admittedly increased compliance costs. *Crawford*, 868 F.3d at 456-57. This would expand the scope of judiciability far beyond what has been established in this circuit and by Supreme Court jurisprudence. *Crawford*, 868 F.3d at 456-57; *Lujan*, 504 U.S. at 562.

In sum, Plaintiff's allegations are that the FBI, acting through Defendant Chambers, approached the seller, asked if Plaintiff filled out forms, told the seller "we have a problem with the company [Plaintiff] keeps," showed the seller a photo of Plaintiff with an individual "of Middle Eastern descent," and left contact information. (ECF No. 1, PageID.11-12, ¶¶ 46-51.) Plaintiff admits that the seller was legally entitled to sell the gun three days later, and presents neither allegations nor suggestions of reasonable inference that the seller was commanded, threatened, or coerced by the FBI. (*Id.*, PageID.12, ¶ 52; ECF No. 17, PageID.140.) Instead, Plaintiff's allegations show only that the seller purposefully and in the exercise of his own free will chose not to engage commercially with Plaintiff. That is a decision left to the seller and the seller alone. It

9

was the result of the "unfettered choice[]" and "broad and legitimate discretion," even if the seller's explanation to Plaintiff referenced the seller's contact with the FBI. *Lujan*, 504 U.S. at 562. (ECF No. 1, PageID.12, ¶¶ 52, 55.) Plaintiff has failed to "adduce facts showing that those choices [were] made in such a manner as to produce causation" and has failed establish standing. *Lujan*, 504 U.S. at 562.

The court's finding conforms to the reasoning of the court in Plaintiff's prior lawsuit. *Turaani*, 316 F.Supp.3d 998. There the court reasoned that Plaintiff's injury of failing to buy a firearm after the three-day delay period "is solely the result of the store proceeding with an abundance of caution or, as the Sixth Circuit has stated, going 'above and beyond' the law. Such 'voluntary and independent' conduct by a third-party is insufficient to adequately allege standing." *Id.* at 1009 (quoting *Crawford*, 868 F.3d at 457). Notwithstanding the legality of the disclosure, there, like here, Plaintiff's alleged injury was only indirectly related to the defendants' actions and was instead the result of a third-party's choice, free from legal compulsion.

To be clear, the first *Turaani* court found that Plaintiff did have an injury traceable to the government by the FBI *command* to withhold sale of a firearm for three days. *Id.* There, the government affirmatively ordered the store clerk, under the color of the FBI's legal authority, to deny Plaintiff the purchase of a weapon. Here, Plaintiff is not challenging the directed three day "delay" in Plaintiff's firearm purchase, and has not presented a harm traceable to a "determinative and coercive" government action. *Crawford*, 868 F.3d at 457. (ECF No. 17, PageID.139.)

The court's decision also complies with *Crawford*. *Crawford*, 868 F.3d 438. The Sixth Circuit rejected the claim that a plaintiff could sue government officials for losing

access to financial services, allegedly caused by the reaction of foreign banks to a higher level of government regulation. *Id.* Those reactions were not mandated or compelled by law. *Id.* at 459. The court reasoned that "a foreign bank's choice either not to do business with [a plaintiff] . . . is a choice voluntarily made by the bank and is not fairly traceable to FATCA." *Id.* Similarly, a gun seller's choice to not do business with Plaintiff was a voluntary decision and was not a result of coercion or government force. Plaintiff's proffered injury lacks traceability to Defendants' actions. *Lujan*, 504 U.S. at 562.

The parties themselves devote no argument to the issue of redressability, and with traceability lacking, the court need not address it.

### IV. CONCLUSION

The injury Plaintiff relies on to establish standing is not traceable to the actions of Defendants. Plaintiff has no standing, within the facts of this case, to sue Defendants for being denied the right to acquire a firearm. Accordingly,

IT IS ORDERED that Defendants Christopher A. Wray, Charles H. Kable, IV, and Jayson R. Chambers' Motion to Dismiss (ECF No. 14) is GRANTED. The case is DISMISSED.

                                          s/Robert H. Cleland                 /
                                          ROBERT H. CLELAND
                                          UNITED STATES DISTRICT JUDGE

Dated: February 20, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 20, 2020, by electronic and/or ordinary mail.

                                          s/Lisa Wagner                     /
                                          Case Manager and Deputy Clerk
                                          (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-11768.TURAANI.MotiontoDismiss.RMK3.RHC.2.docx